UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROGER MERRIL<br>    Plaintiff,<br><br>v.<br><br>COMPUTERSHARE INC., LINCOLN ELECTRIC HOLDINGS, INC.,<br><br>    Defendants. | Case. No. _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Roger Merril brings this action against Defendants Computershare Inc. Lincoln Electric Holdings, Inc. to recover damages for Defendants wrongfully escheatment of shares of Lincoln Electric Holdings, Inc. stock to Ohio, in violation of their duties to Plaintiff, their contractual obligations, and state and federal law. At all times, Defendants knew how to locate and contact Plaintiff. They nevertheless wrongly claimed that Plaintiff had abandoned his stock. As a result of Defendants' wrongful actions, Plaintiff has suffered damages, including but not limited to the loss in valuation increase of the escheated stock, lost revenue from quarterly dividends and negative tax consequence, all of which were completely avoidable absent the wrongful acts of Defendants.

**Parties**

1. Plaintiff Roger Merril is an individual residing the Lake County, Ohio who was a former employee of Lincoln Electric Holdings, Inc. and the owner of shares of Lincoln Electric Holdings Inc. stock through both individual purchase and grant of shares by Lincoln

1

Electric Holdings, Inc. to their employees.

2. Defendant Computershare Inc. is a corporation formed under the laws of the state of Delaware and is duly registered to do business as a foreign corporation in the State of Ohio. It is a citizen of the State of Delaware. On information and belief, Computershare Inc. has its principal place of business in Canton, Massachusetts acted as the transfer agent of Defendant Lincoln Electric Holdings, Inc. during all relevant periods.

3. Defendant Lincoln Electric Holdings, Inc. ("Lincoln") is an industrial manufacturing company, a citizen of the State of Ohio, is incorporated under the laws of the State of Ohio and is headquartered and has its principal place of business in Cleveland, Ohio. Lincoln stock is traded on the NASDAQ exchange under the symbol LECO.

## Jurisdiction and Venue

4. This Court has federal subject matter jurisdiction over this matter based on the federal questions raised by Plaintiff' federal law claims.

5. The United States District Court for the District of Ohio is the proper venue for this matter pursuant to 28 U.S.C. § 1391 and O.R.C. 2307.382 as Defendants are either residents of this state and/or regularly transact business in this state, offer goods and services in this State, had contracted with Plaintiff (a residence of this State and judicial district) for the provision of services and the tortious acts of Defendants, regardless of the location they were committed, causes injury to a citizen of the State of Ohio located within this jurisdictional district and under 28 U.S.C. § 1331 regarding federal question / federal causes of action.

## Facts

6. Plaintiff was an employee of Defendant Lincoln for in excess of thirty years.

7. Plaintiff, as part of his regular compensation, was awarded shares of Lincoln Stock, and also purchased shares individually.

8. As of October 28, 2019, Plaintiff was the owner of 11,900 shares of stock.

9. Plaintiff received his last dividend check, totaling $5,593.00 in July of 2019.

10. The dividend checks acted as a retirement supplement for Plaintiff.

11. Plaintiff always intended on keeping his shares of Defendant Lincoln until the time of his death, at which time they would pass without negative tax consequence to his heirs through his estate.

12. On information and belief, the Computershare Defendants were contracted by Defendant Lincoln to manage all stock transactions and oversee all necessary paperwork, industry standards and statutory requirements as it applied to the Lincoln stock were met.

13. On information and belief, as part of the agreement with Lincoln, Computershare's agreed to provide services related to the escheatment of Lincoln's abandoned or unclaimed securities.

14. These services included, without limitation, services to locate lost shareholders and to communicate with shareholders to prevent escheatment and services to determine whether Lincoln shares constituted unclaimed property.

15. Plaintiff was and is the intended third-party beneficiaries of Computershare's contract with Lincoln to provide escheat services, including any indemnity provisions set forth therein.

**Plaintiff' Communications with Defendants**

16. On information and belief, Lincoln and periodically sent correspondence to Plaintiff regarding his shares, which Plaintiff received. On information and belief, no correspondence sent to Plaintiff by Lincoln or Computershare was ever returned as undeliverable.

17. In addition, on information and belief, Computershare was required to calculate

and issue dividend checks on behalf of Lincoln, as a regular part of their servicing agreement.

18. At no time was any dividend payment issued to Plaintiff not promptly deposited in his account, and at no time were any payments ever returned.

19. On information and belief, at no time relevant to this litigation did Computershare and/or Lincoln ever receive any indication that Plaintiff was deceased, incapacitated or intended to abandon his shares in Lincoln.

**Defendants Wrongfully Escheated Plaintiff's Shares**

20. Even though at all relevant times Lincoln and Computershare were aware of the location of Plaintiff, and Plaintiff regular acceptance and deposit of his quarterly dividend check form Defendants, Computershare, acting as the agent of Lincoln, erroneously reported to the State of Ohio on or between August and October 2019 that 11,900 shares owned by Plaintiff had been "abandoned" and constituted "unclaimed property" and then delivered Plaintiff's 11,900 shares to Ohio on before October 28, 2019. That is, they escheated the shares to Ohio.

21. Upon receipt of the shares, Defendant State of Ohio then proceeded to sell said shares rightfully belonging to Plaintiff, and subsequently issuing Plaintiff a check for the proceeds of the sale, despite Plaintiff having never abandoned his shares and having no desire to liquidate the shares.

22. Computershare states on its website (available at https://www-us.computershare.com/content/download.asp?docId=%7BFFD8EC48-FF06-4700-9176-D42E34B17A84%7D): "State law requires all companies to perform due diligence searches to locate holders at risk of escheatment before declaring their property to be abandoned."

23. On information and belief, Computershare did not perform a due diligence search to locate or communicate with Plaintiff before declaring their property to be abandoned.

4

24. Under Ohio Law, acceptance of a dividend payment is one of the actions that prevents a property from being declared legally abandoned.

25. Neither Computershare nor Lincoln ever provided Plaintiff with any notice that his shares in Lincoln could potentially be or actually would be escheated if any particular action was not taken before the shares were escheated.

26. In addition, neither Computershare nor Lincoln ever provided Plaintiff with any notice that his shares were to be escheated before they were escheated.

27. Neither Computershare nor Lincoln ever informed or disclosed to the Plaintiff that, in their view, (a) Plaintiff's shares were subject to Ohio's unclaimed property laws, (b) Plaintiff was required to initiate affirmative contact with such Defendants regarding the shares on any periodic basis, or (c) there was even the possibility that, under certain circumstances, Plaintiff's shares could be deemed abandoned property and escheated to the State of Ohio.

28. Neither Computershare nor Lincoln disclosed to Plaintiff that there had been any change in Ohio's unclaimed property laws that, in their view, would result in the automatic escheat of Plaintiff's shares unless immediate action was taken.

29. Computershare sent periodic securities account statements to shareholders during the relevant period that state: "This advice is your record of the share transaction affecting your account on the books of the Company. … It should be kept with your important documents as a record of your ownership of these shares. ***No action on your part is required***, unless you wish to deposit your existing certificates, sell or request a certificate, or transfer your book-entry shares." (Emphasis added.)

30. At no time did Ohio attempt to contact Plaintiff to notify him that his shares had been escheated or to attempt to return their shares to him before selling Plaintiff's

5

shares

## Count I: Negligence
### (Against All Defendants)

31. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

32. Computershare and Lincoln owed duties to Plaintiff to, among other things, account properly for the status of Plaintiff's shares, exercise due care and diligence in exercising control over the disposition of Plaintiff's shares, and manage and handle Plaintiff' shares in a manner that complied fully with federal and state law.

33. Computershare and Lincoln breached their duties to Plaintiff by wrongfully escheating Plaintiff' shares in Lincoln to the State of Ohio.

34. The Ohio Escheats Law, notices of property deemed to have been abandoned must be sent via certified mail if the property, as in this case, has a value in excess of $1000.00.

35. The Ohio Escheats Law also requires that two of the following three forms of verification of contact with the owner be kept before deeming property abandoned, a failure to respond to a letter via first class mail, along with the notice of abandoned property, the return of a first class letter as undeliverable and an electronic and/or manual search of public records failed to verify the last known address of the property holder.

36. The escheat of Plaintiff's shares is also contrary to the federal common law rules adopted by the United States Supreme Court for determining when states have the right and jurisdiction to escheat unclaimed intangible property.

37. Even if Ohio law were applicable to Plaintiff's shares, Computershare and Lincoln erroneously applied the incorrect standard for escheat. Furthermore, even under that standard, Plaintiff's shares would not have been escheatable because Plaintiff did in fact have

6

contact with Lincoln with respect to his shares during the three-year period prior to the date his shares were escheated.

38. Computershare and Lincoln also breached their duties to Plaintiff by failing to conduct due diligence to determine, among other things, (a) whether Plaintiff' shares were actually abandoned, (b) the date of Plaintiff' last contact with Lincoln, specifically the last date of acceptance of a dividend payment by Plaintiff and (c) whether the Ohio Escheat Law applied to Plaintiff's shares at all.

39. Computershare and Lincoln also breached their duties to Plaintiff by failing to contact Plaintiff with respect to his shares, even though such Defendants knew how to contact Plaintiff, and by failing to notify Plaintiff of their intent to escheat Plaintiff' shares in the (supposed) absence of such contact or other action.

40. Computershare also breached its duties by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares.

41. Lincoln also breached its duties by failing to inform Computershare of such contacts and relationship and other relevant facts.

42. Computershare and Lincoln also breached their duties to Plaintiff by (a) failing to notify Plaintiff that they intended to escheat his shares to the State of Ohio and (b) failing to notify Plaintiff that the shares had in fact been escheated.

43. Computershare and Lincoln also breached their duties to Plaintiff by failing to disclose to Plaintiff in any document that (a) Defendants believed Plaintiff' shares could even potentially be escheated to a state under certain circumstances, (b) Ohio's Escheats Law applied to Plaintiff's shares, or (c) there was a change in law in Ohio that, in such Defendants'

view, would result in the automatic escheat of Plaintiff' shares unless immediate action was taken.

44. Computershare's and Lincoln's actions in escheating Plaintiff' shares to Ohio did not meet reasonable commercial standards of practice in the securities industry.

45. As a result of Computershare's and Lincoln's negligence, Plaintiff has been deprived of his quarterly dividend check, has had his estate planning process circumvented by third party actors, has been subjected to unnecessary and completely avoidable capital gains tax and has been damaged in an amount to be proven at trial, said amount being not less than $75,000.00

## Count II: Violation of Ohio Consumer Sales Act
### (Against All Defendants)

46. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

47. By their acts and omissions set forth in detail above, Computershare and Lincoln recklessly, willfully and knowingly engaged in unfair and/or deceptive acts and/or practices in violation of the Ohio General Laws.

48. These acts and omissions include, without limitation, (a) Computershare's and Lincoln's wrongful escheat of Plaintiff's shares, (b) Computershare's and Lincoln's failure to notify Plaintiff that they intended to escheat his shares to the State of Ohio, or contact Plaintiff to prevent (in such Defendants' view) such escheatment, (d) Computershare's and Lincoln's failure to notify Plaintiff that his shares had in fact been escheated, (e) Computershare's and Lincoln's misrepresentation to Plaintiff that his shares had been escheated to Ohio, which misrepresentation caused a delay of approximately sixteen??? months in Plaintiff' attempts to recover his shares, (f) Computershare's and Lincoln's failure to disclose to Plaintiff that such Defendants

believed Plaintiff's shares could even potentially be escheated to a state under certain circumstances, or that there was a change in law in Ohio that, in such Defendants' view, would result in the automatic escheat of Plaintiff' shares unless immediate action was taken, (g) Computershare's and Lincoln's failure to notify Plaintiff that his shares were about to be, or had in fact been, escheated to Ohio, and (h) Computershare's and Lincoln's failure to provide sufficient information to Ohio to enable it to return Plaintiff' shares to him.

49. Computershare's and Lincoln's acts and omissions set forth above were done recklessly, willfully and knowingly.

50. These actions occurred substantially in and from Ohio, where both Lincoln and Computershare are located.

51. Had Computershare or Lincoln advised, notified or made adequate disclosures to Plaintiff as it should have, Plaintiff would have taken steps to protect their substantial interests and to ensure that their shares would not be escheated.

52. As a result of Computershare's and Lincoln's acts and omissions, Plaintiff have been damaged in an amount to be proven at trial, said amount being not less than $75,000.00.

### Count III: Conversion
### (Against All Defendants)

53. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

54. Plaintiff owned a combined total of 11,900 shares in Lincoln prior to the time that Computershare and Lincoln wrongfully escheated their shares to the State of Ohio.

55. In wrongfully escheating the shares, Computershare and Lincoln exercised ownership, control, and/or dominion over Plaintiff's property, to which they had no right of

9

possession, thereby depriving Plaintiff of his valuable property.

56. As a result of Computershare's and Lincoln's conversion, Plaintiff has been damaged in an amount to be proven at trial, said amount being not less than $75,000.00.

## Count IV: Breach of Contract
### (Against All Defendants)

57. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

58. Lincoln is required to comply with any escheat or unclaimed property laws that apply to abandoned or unclaimed securities that it issues. Under such laws, Lincoln has a duty to communicate periodically with its shareholders to prevent their shares from being escheated.

59. On information and belief, Lincoln contracted with Computershare to provide transfer agent services, including services related to the escheatment of Lincoln's abandoned or unclaimed securities. These services included, without limitation, services to locate lost shareholders and to communicate with shareholders to prevent escheatment and services to determine whether Lincoln shares constituted unclaimed property.

60. The shareholders of Lincoln, including Plaintiff, were and are the intended third-party beneficiaries of the contract, including any indemnity provisions set forth therein.

61. By Computershare's acts and omissions set forth herein, including but not limited to its wrongful escheatment of Plaintiff's shares to the State of Ohio and its failure to provide notice of such escheatment to Plaintiff, Computershare breached its duties under the contract with Lincoln.

62. Computershare also breached its duties by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares.

63. Lincoln also breached its duties by failing to inform Computershare of Plaintiff's contacts and relationship and other such relevant facts.

64. As a result of Computershare's breach of contract, Plaintiff have been damaged in an amount not less than $75,000.00

### Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

65. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

66. On information and belief, Lincoln contracted with Computershare to provide transfer agent services, including services related to the escheatment of abandoned or unclaimed securities.

67. By wrongfully escheating Plaintiff's shares and failing to notify Plaintiff of the potential or actual escheat of his shares, and for other reasons set forth herein, Computershare and Lincoln breached the implied covenant of good faith and fair dealing, resulting in harm to Plaintiff.

68. Computershare also breached the implied covenant of good faith and fair dealing by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares.

69. In addition, Lincoln also breached the implied covenant of good faith and fair dealing by failing to provide necessary reports to Computershare regarding of Plaintiff's contacts and relationship with Lincoln, and by failing to provide necessary information and disclosures to Lincoln's shareholders, as well as the other acts and omissions described herein.

70. Both Computershare's and Lincoln's actions and inactions deprived Plaintiff

of the fruits of the contract, unfairly interfering with the rights of Plaintiff, the third-party beneficiaries, to receive the benefits of the contract.

71. As a result of Computershare's and Lincoln's breaches of the implied covenant of good faith and fair dealing, Plaintiff have been damaged in an amount not less than $75,000.00.

### Count VI: Breach of Fiduciary Duty
### (Against Defendant Lincoln)

72. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

73. Lincoln and its officers or directors had fiduciary duties to Plaintiff to, among other things, safeguard and protect Plaintiff's shares, maintain accurate books and records regarding Plaintiff' ownership of shares, not make untrue statements of material facts or conceal material facts, or engage in any practice or course of business that would operate as a deceit.

74. Lincoln and its officers and directors breached those duties by, among other things, (a) erroneously determining that shares owned by Plaintiff were abandoned and thus escheatable; (b) wrongfully escheating Plaintiff' shares in violation of law; (c) failing to notify Plaintiff of such escheat; (d) failing to maintain accurate books and records regarding Plaintiff's ownership of shares; (e) failing to convey such information to Computershare, its transfer agent; and (f) failing to make disclosures to Plaintiff of material facts. .

75. Lincoln knew or should have known that Plaintiff had not abandoned his shares for a number of reasons, including that Plaintiff or his principals had regular contact with Lincoln and ws a key participant in Lincoln's business.???

76. As a result of Lincoln's breach, Plaintiff have been damaged in an amount not less than $75,000.00.

**Count VII: Violation of 15 U.S.C. §§ 77a-77bbb, 78a-78hh (Federal Securities Laws)**
**(Against All Defendants)**

77. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

78. The Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) (the "1933 Act") and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (the "1934 Act") are designed specifically to protect Plaintiff and his stock investments. (The 1933 Act and the 1934 Act are collectively referred to as the "Federal Securities Laws.")

79. The Federal Securities Laws, including Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 10b, 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act, guarantee Plaintiff the right, among other things, to transfer his shares of stock as he pleases, to receive material information on his investments, and to vote on shareholder issues. The Federal Securities Laws further specify that a fiduciary relationship exists and runs from the corporation to stock investors like Plaintiff. Defendants' conduct interfered with the federal securities protections designed to protect Plaintiff.

80. The improper escheat of Plaintiff's shares by Computershare and Lincoln without proper notice and due process violates and directly interferes with the application of the Federal Securities Laws.

81. Specifically, among other violations of the Federal Securities Laws, Computershare and Lincoln violated §10(b) of the Exchange Act and Rule 10b-5 inasmuch as they intentionally or recklessly and in conscious disregard of the law engaged in the acts, practices and omissions previously alleged, including:

    (a) employing devices, schemes and artifices to wrongfully deprive Plaintiff of his shares;

13

    (b)  making untrue statements of material facts (for example, that Plaintiff' shares were escheated to Ohio) or omitting to state material facts necessary in order to make the statements made not misleading in light of the circumstances under which they were made, including but not limited to (a) Computershare's and Lincoln's failure to notify Plaintiff that, in their view, the Ohio's Escheats Law applied to Plaintiff's shares in Lincoln and that Plaintiff must, therefore, familiarize himself and comport himself with that law with respect to their shares, (b) Computershare's and Lincoln's failure to notify Plaintiff that changes had been made to Ohio's unclaimed property laws that, in their view, would result in the automatic escheat of Plaintiff's shares unless immediate action was taken, (c) Computershare's and Lincoln's failure to notify Plaintiff that his shares had in fact been escheated, and (d) Computershare's and Lincoln's failure to notify Plaintiff that his shares were about to be, or had in fact been, escheated to Ohio; and

    (c)  engaging in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff, including escheating Plaintiff's shares even though Computershare and Lincoln knew or should have known that the shares were not abandoned and even though Computershare and Lincoln at all times knew how to contact Plaintiff with respect to his shares.

  82.  Computershare and Lincoln, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, recklessly and in conscious disregard of the law engaged and participated in a continuous course of conduct that concealed material information about the proper status of Plaintiff's shares as specified herein or the applicable law governing them.

  83.  As a result of Computershare's and Lincoln's acts and omissions and violations

of the Federal Securities Laws, Plaintiff has been damaged in an amount not less than $75,000.00.

### Count VIII: Violations of 42 U.S.C. § 183 (Against All Defendants)

84. Plaintiff incorporates by reference all the foregoing paragraphs above as though fully set forth herein.

85. Plaintiff was the rightful owner of 11,900 Lincoln shares escheated by Computershare and Lincoln to Ohio. Plaintiff had a property interest in the shares escheated to Ohio.

86. Computershare and Lincoln claim to have escheated Plaintiff's shares pursuant to the Ohio Escheats Law.

87. The escheat of unclaimed property is an exercise of the state's sovereign authority and, as such, is an exclusively public function.

88. To the extent that Ohio law requires escheat of Plaintiff's shares, Ohio was directly involved in, and was responsible for, the actions taken by Computershare and Lincoln in not only purportedly requiring the escheat of the shares under its Escheats Law, but also validating the escheat of Plaintiff' shares by receiving and subsequently selling the shares.

89. In escheating Plaintiff' shares, Computershare and Lincoln acted in close nexus with Ohio and had a symbiotic and intertwined relationship with Ohio, as Ohio's ability to escheat the shares was necessarily dependent on, and required, Computershare's and Lincoln's actions. Ohio, Computershare and Lincoln thus jointly participated in the escheat of the shares.

90. Computershare's and Lincoln's actions in escheating Plaintiff's shares constituted an integral part of Ohio's escheat system without which Ohio's escheat system could not function.

91. Ohio encouraged and coerced Computershare's and Lincoln's conduct by subjecting Computershare and Lincoln to penalties for any failures to comply with the Ohio Escheats Law. As such, any provisions of the Ohio Escheats Law, or any other guidance released by Ohio that purports to require the escheat of Plaintiff's shares constitutes an affirmative command by Ohio for Computershare and Lincoln to escheat Plaintiff's shares.

92. Thus, Computershare and Lincoln acted under the color of law when they escheated Plaintiff's shares to Ohio.

93. In escheating Plaintiff's shares to Ohio, particularly without notice of the escheat or of any change in the Ohio Escheats Law that would purportedly result in the automatic escheat of Plaintiff's shares, Computershare and Lincoln, acting under color of law, effected a deprivation and taking of Plaintiff's property without due process of law as required under the Fourteenth Amendment to the United States Constitution.

94. Furthermore, under federal common law rules created by the United States Supreme Court for determining when states have the right and jurisdiction to escheat unclaimed intangible property, the State of Ohio had no right or jurisdiction to escheat Plaintiff's shares because Plaintiff's shares were owned by foreign persons. Courts have held that states may not escheat unclaimed property in a manner contrary to these rules. Accordingly, under these federal common law rules, Plaintiff has a federally protected right that their shares may not be escheated by any state, including Ohio.

95. Similarly, under the Commerce Clause of the United States Constitution, Plaintiff has a federally protected right to expect that his shares would be regulated by Congress, if at all, rather than by any individual state. As a result, Plaintiff has a federally protected right to expect that his shares would not be subject to escheat by any state, including

16

Ohio.

96. Ohio also did not have the right to escheat Plaintiff' shares because, among other reasons, Plaintiff had not abandoned his shares, Computershare and Lincoln knew how to find and contact Plaintiff, and Plaintiff had affirmative contact with Lincoln regarding his shares, including in the three years prior to the date of escheatment.

97. Computershare's and Lincoln's conduct caused Plaintiff to sustain damages in an amount to be proven at trial, said amount being in excess of $75,000.00.

## **Prayer For Relief**

WHEREFORE, Plaintiff request the following relief:

1. Award Plaintiff damages, costs, attorneys' fees, and pre-judgment and post-judgment interest, as permitted by applicable law;

2. Award Plaintiff trebble damages and attorneys' fees pursuant to Ohio law.

3. Award Plaintiff attorneys' fees and punitive damages pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988; and

4. Award Plaintiff such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury of the maximum number on all issues heretofore pled.

                PLAINTIFF, ROGER MERRIL,
                By and through His Attorneys,

                /s/ Jay F. Crook
                Jay F. Crook #0078499
                Jay F. Crook Attorney at Law, LLC
                30601 Euclid Avenue
                Wickliffe, OH 44092
                PH: 440-944-7020

FAX: 440-943-3096
EMAIL: jay.crook@euclidavelaw.com

/s/ John W. Shryock
John W. Shryock (0031277)
John Shryock Co. LPA
30601 Euclid Avenue
Wickliffe, OH 44092
440-944-7020
FAX: 440-943-3096
john@lawsjws.com